Mathews, J.
delivered the opinion of the court. To ascertain whether the process of attachment be the just and lawful remedy, in cases like the present, we must resort to a fair and legal construction of the legislative acts, as being the principal foundation in our laws of such proceedings—In doing this, it is necessary to turn our attention more particularly, if not exclusively, to the act of 1805, which is the law from which our courts derive their authority to proceed against the property of non-residents. The statutes of 1807 and 1811 only require some additional steps to be taken by plaintiffs in attachment, without making any change in the principles of the first laws. It is now proper to remark that the statute, which is now about to be discussed, is among the earliest acts of le *529 gislation in this country, soon after it was acquired by the United States, and we believe was penned by persons, deriving their legal ideas from a knowlege of the English laws. A recurrence to general rules for the construction of laws, or the definition of legal terms, as found in common law authors, even if in any case it ought to be objected to, is fairly admissible for the present. These rules and definitions ought to be the same in every system of jurisprudence founded in common sense, and the common acceptation of words. Our statute of 1805 clearly and expressly authorises proceedings in rem, in cases of attachment, in a suit for the recovery of a debt due by a person residing out of the state. If we refer to authors on the common law of England to ascertain the legal acceptation of the word debt, in its most strict and technical meaning, it is perhaps limited to the idea of a determinate sum of money, due On an express agreement. 3 Blacks. 154. Yet, the action of debt is not confined to contracts for money alone. As expressed by the same writer, in the following page, “its form is sometimes in the de-"bet and detined, and sometimes in the detinet "only, as in an action for goods, for a horse, &c." Also, in Chitty on pleadings, it is stated that an action of debt lies in the debet for goods, as *530 on a contract to deliver a quantity of malt, &c. Thus we see that, according to the authorities, the action of debt in the detinet is a legal remedy, on an express agreement to deliver any specific property; and the person, who for a lawful consideration promises to deliver to another a quantity of goods, specified in the agreement, ought to be considered the debtor of the latter for the things promised, and then these things constitute a debt. Nothing can be more evident than the truth of this position, when the obligation arises on an express contract. Is it less time, or well founded, when the contract is implied? We think not. Obligations, arising from implication of law, are equally binding with those, created by an express agreement. Whether the obligation of a common carrier to indemnify a person, who has entrusted him with goods, which are lost by the negligence of the former, be one growing out of an express or implied contract may be doubted: but, admitting its origin to be from implication, the indemnity due is not less a debt. In 2 Blacks. 464, where the author treats of the action of debt, it is stated that in a bailment, “if the bai-“lee loses or detains a sum of money bailed to "him, for a specific purpose, he becomes indebt"ed to the bailor, upon the same numerical sum *531 "upon his implied contract.” Here we see a debt may be created by implication, in a contract of bailment, when the thing bailed is money. In express contracts, we have seen that a promise to deliver any property or goods, specified in the agreement, makes the promisor debtor to the promisee for these goods; and the things promised constitute a debt. The obligations arising from implied contracts are equally binding on the obligor as those arising from express contracts; therefore, the bailee of goods who loses or detains them improperly, becomes indebted to the bailor for those goods. If this conclusion be correct (of which we have no doubt) then the case cited, from Sergeant’s law of attachment, is completely applicable to the one now about to be decided. The words of the act of Pennsylvania, on which the decision alluded to is founded, do not embrace a greater Variety of contracts than our act of 1805. It is true that there an express contract existed, in Which the defendant in the attachment, bound himself to deliver teas of the first quality to be sold for the benefit of the plaintiff, in a market stipulated between the contracting parties, and if the teas should not prove of such a quality, he bound himself to make good the difference. On this agreement, the plaintiff having ascertained *532 by his own oath the amount of the deficiency, the court supported the attachment. But we have already shewn, that no distinction ought to be made between an express and an implied contract, and do therefore conclude, that it may be properly and safely laid down as a general rule, that all obligations arising from contracts, either express or implied, either for the payment of money or the delivery of goods, create a debt on the part of the obligor, for Which an attachment may issue, whenever the amount may be fairly ascertained by the oath of the obligor.
In this view of the subject, we deem it unecessary to examine the reasoning of counsel drawn from the similarity betwixt bail as authorised by law and attachments.
If we turn to writers on the civil law, it is found that he is said to be a debtor, who owes reparation or damages for the non-performance of his contract. 1 Pothier on Obligations, n. 159.
The judge of the district court erred, we think, in considering the obligation of the defendants and appellees to indemnify the plaintiff and appellant for his loss, (if any exists) as arising ex delicto and not ex contractu; it is clearly one arising out of a contract of bailment, and which, in conformity with a proper acceptation of the word debt, authorises the plaintiff to *533 have his attachment against the property of the defendants.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that the cause be sent back to be tried on the merits, and that the parties be replaced in the situation in which they were before the judgment of the district court, dissolving the plaintiff’s attachment.